STATE OF NORTH CAROLINA v. ANTHONY MATHEW MANGUM

No. COA02-988

(Filed 3 June 2003)

1. **Burglary and Unlawful Breaking or Entering— indictment—allegation of non-existent felony—surplusage**

A burglary indictment alleging that defendant broke and entered with intent to commit the felonies of sexual assault and kidnapping was sufficient even though the crime of sexual assault does not exist in North Carolina. The indictment properly alleged intent to commit a felony; the specific language alleging intent to commit a sexual assault was unnecessary and does not create a fatal variance. Moreover, the indictment also alleged an intent to kidnap the victim, a crime for which defendant was convicted.

2. **Burglary and Unlawful Breaking or Entering— first-degree burglary—sufficiency of evidence—intent to commit felony—existence at time of entry**

There was sufficient evidence of first-degree burglary where defendant contended that there was insufficient evidence that he intended to rape the victim at the time he entered the residence. Defendant committed overt acts manifesting an intent of forcible sexual gratification, and none of the acts committed within the residence furthered defendant's asserted goals of using the telephone or the restroom.

3. **Kidnapping— second-degree—restraint—sufficiency of evidence**

The trial court correctly refused to dismiss a charge of second-degree kidnapping where defendant contended that there was insufficient evidence that he restrained the victim to commit a felony, but the evidence tended to show that he took the victim to a more secluded area to prevent others from witnessing

or hindering the rape. Asportation of a rape victim is sufficient to support a charge of kidnapping if defendant could have perpetrated the offense when he first threatened the victim.

**4. Burglary and Unlawful Breaking or Entering— lesser offense of non-felonious breaking or entering—no instructions**

There was no plain error in refusing to instruct on non-felonious breaking or entering in a first-degree burglary prosecution where there was substantial evidence that defendant entered the residence in order to rape the victim and none of the acts committed by defendant in the residence were in furtherance of his stated intent to use the telephone or the restroom.

**5. Kidnapping— second-degree—no instruction on false imprisonment**

There was no plain error in the court's refusal to instruct the jury on false imprisonment in a second-degree kidnapping prosecution where there was substantial evidence from which a jury could find that defendant restrained the victim for the purpose of raping her. Defendant's overtly sexual actions belie his assertions that he restrained the victim to use the telephone, to use the bathroom, or as horseplay.

Appeal by defendant from judgment entered 28 November 2001 by Judge James E. Ragan, III, in Wayne County Superior Court. Heard in the Court of Appeals 14 May 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Frank G. Swindell, Jr., for the State.*

*William D. Spence for defendant appellant.*

TIMMONS-GOODSON, Judge.

Anthony Mathew Mangum ("defendant") appeals from the judgment of the trial court entered upon a jury verdict finding him guilty of first-degree burglary, attempted second-degree rape, and second-degree kidnapping. Defendant also pled guilty to habitual felon status. For the reasons stated herein, we find no error in the judgment of the trial court.

The evidence for the State tended to show the following: On 13 February 2001, at approximately 2:30 a.m., defendant knocked on the door of the residence of the victim, C.H. C.H. lived at the residence

with her mother, sister, and her sister's two young daughters. Defendant was the victim's cousin and a friend of her brother. When C.H. answered the door, she informed defendant that he could not come into the residence. She returned to bed and fell asleep.

C.H. woke at 4:00 a.m. because her niece was standing beside her bed. When C.H. left her bedroom to return the child to her own room, C.H. observed defendant standing in the living room of the residence. C.H. then picked up a telephone and asked defendant how he had entered the residence. Defendant informed C.H. that her mother had let him in, but C.H. knew that her mother was out of town at that time. C.H. then woke her sister, Karena, and asked her whether she had allowed defendant to enter the residence. When Karena responded negatively, C.H. telephoned 911 emergency assistance. Defendant then asked to use the telephone and the restroom, both of which requests C.H. denied. Defendant then pushed C.H. down the hall, into her bedroom and onto her bed. C.H. and defendant began struggling, and defendant attempted to "pin [C.H.] down" on the bed. Defendant then "pulled out some duct tape," and C.H. called to Karena for assistance. According to defendant, "when [he] was holding [the victim] down on the bed[,] she was yelling out, 'he is trying to rape me' to her sister Karena." When Karena entered the bedroom, defendant was lying on top of C.H. and holding her arms "behind her back real tightly." C.H. told Karena to "get the wood stick" that she kept beside her bed for protection, but Karena's children were crying and she left the room to attend to them. Defendant then began "grabbing [C.H.] on [her] vagina" and "grabbed her whole breast." C.H. managed to reach the piece of wood she kept beside her bed and struck defendant with it. Defendant ended his assault when law enforcement arrived shortly thereafter. Defendant fled the residence, escaping through the rear door.

In his later statement to law enforcement officers, defendant admitted that he "broke in the trailer without permission." Defendant further stated that C.H.

> picked up a stick and started hitting me with it. I knocked the stick out of her hand and grabbed her and pushed her up onto the bed. I got on top of her and was holding her down on the bed. I was telling—I was talking to her telling her why is she treating me like this. [C.H.] was not fighting me then because I had her arms held down. I then touched her right breast one time. I grabbed her whole breast in my hand. [C.H.] was yelling at me to get off of her. I then grabbed her between her legs. . . . I got a piece of duct tape

out of my left pocket and told her I was going to put this tape on her mouth if she didn't stop fussing at me. . . . When I was holding [C.H.] down on the bed she was yelling out he is trying to rape me to her sister Karena. I know what I did was wrong and if I just could do it all over again I would not have went [sic] into the trailer without permission. . . . I did not know [C.H.] was going to tell the police that I was trying to rape her. I was just horseplaying when I grabbed her breast and her vagina.

Defendant offered no evidence at trial.

Upon the close of the evidence, the jury found defendant guilty of first-degree burglary, attempted second-degree rape, and second-degree kidnapping. Defendant also pled guilty to habitual felon status. The trial court consolidated the charges and sentenced defendant to a minimum term of 100 months' imprisonment, with a maximum term of 129 months' imprisonment. From the judgment entered against him, defendant appeals.

Defendant contends that the trial court erred in (1) denying defendant's motion to dismiss the charges against him; (2) failing to instruct the jury on the lesser-included offense of non-felonious breaking and entering in the first-degree burglary charge; and (3) failing to instruct the jury on the lesser-included offense of false imprisonment in the second-degree kidnapping charge. For the reasons stated herein, we find no error in the judgment of the trial court with respect to defendant's arguments.

By his first assignment of error, defendant contends that there was insufficient evidence that he intended to rape the victim or otherwise commit any felony within the residence at the time he forced his way into the home. Defendant therefore argues that the trial court erred in denying his motion to dismiss the charge of first-degree burglary and of attempted second-degree rape. Defendant asserts that there was a similar lack of evidence to support the charge of second-degree kidnapping.

Upon a defendant's motion to dismiss, the trial court must consider the evidence in the light most favorable to the State, allowing every reasonable inference to be drawn therefrom. *See State v. Benson*, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992). A motion to dismiss is proper when the State fails to present substantial evidence of each element of the crime charged. *See State v. McDowell*, 329 N.C. 363, 389, 407 S.E.2d 200, 214 (1991). Substantial evidence is evidence

that is "existing and real, not just seeming or imaginary." *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980). We therefore examine the relevant law regarding the crimes of which defendant was convicted and the evidence presented by the State supporting such convictions.

**[1]** To support a first-degree burglary conviction, there must be evidence from which a jury could find that the defendant broke and entered an occupied dwelling of another at nighttime with the intent to commit a felony therein. *See State v. Wells*, 290 N.C. 485, 494, 226 S.E.2d 325, 331 (1976). The intent to commit a felony must exist at the time of entry, and it is no defense that the defendant abandoned the intent after entering. *See State v. Wilson*, 293 N.C. 47, 54, 235 S.E.2d 219, 223 (1977); *Wells*, 290 N.C. at 494, 226 S.E.2d at 331. The indictment of defendant in the present case alleged that defendant "broke and entered with the intent to commit felonies therein, to wit: sexual assault and kidnapping." Although defendant correctly notes that the crime of sexual assault does not exist in North Carolina, our Supreme Court has expressly held that an indictment for burglary does not require identification of the specific felony that the defendant intended to commit when he broke into a dwelling. *See State v. Worsley*, 336 N.C. 268, 280-81, 443 S.E.2d 68, 74 (1994); *see also State v. Roten*, 115 N.C. App. 118, 121-22, 443 S.E.2d 794, 797 (1994) (concluding that there was no fatal variance between an indictment alleging that the defendant forcibly entered a residence "with the intent to commit a felony therein: first degree sexual offense" and the defendant's conviction of first-degree burglary and attempted second-degree sexual offense because "the State is only required in the indictment to allege that the defendant intended to commit *a* felony" and therefore "any language in the indictment which states with specificity the felony defendant intended to commit is surplusage which may properly be disregarded"). Because the indictment properly alleged that defendant broke and entered the victim's residence with the intent to commit a felony, the specific language charging defendant with the intent to commit a sexual assault was unnecessary and does not create a fatal variance between the indictment and the evidence offered at trial. We further note that the indictment charged defendant with the intent to kidnap the victim, a crime for which he was convicted.

**[2]** Defendant argues that the State failed to present sufficient evidence that, at the time he forcibly entered the victim's residence, he intended to either rape or kidnap her. Because defendant's argument is dependent in large part on the substantive law of this State con-

cerning the crimes of attempted rape and kidnapping, resolution of this issue first requires an examination of these crimes. If there is sufficient evidence from which a jury could find that defendant either kidnapped or attempted to rape the victim, we will then consider whether or not the State presented sufficient evidence that defendant possessed the requisite intent to commit either of these crimes at the time he broke into the victim's residence. We now consider the crime of attempted rape.

In order to convict a defendant of attempted rape, the State must show that (1) the defendant had the specific intent to rape the victim; and (2) that the defendant committed overt acts showing intent to rape, going beyond mere preparation but falling short of the completed offense of second-degree rape. *See State v. Boone*, 307 N.C. 198, 210, 297 S.E.2d 585, 592 (1982); *State v. Canup*, 117 N.C. App. 424, 427, 451 S.E.2d 9, 11 (1994). The defendant need not retain the specific intent to rape throughout the commission of the overt acts forming the basis of the charge, as long as he at any time during the attempt has an intent to gratify his passion upon the woman, notwithstanding any resistance on her part. *See State v. Banks*, 295 N.C. 399, 412, 245 S.E.2d 743, 752 (1978). " 'Intent is an attitude or emotion of the mind and is seldom, if ever, susceptible of proof by direct evidence[;] it must ordinarily be proven by circumstantial evidence, i.e., by facts and circumstances from which it may be inferred.' " *Id.* (quoting *State v. Gammons*, 260 N.C. 753, 755-56, 133 S.E.2d 649, 651 (1963)).

The question of sufficiency of evidence to justify an inference of intent to rape has been addressed by our appellate courts in a number of cases. In *State v. Gay*, 224 N.C. 141, 29 S.E.2d 458 (1944), the Court held that where the defendant indecently exposed himself to the victim on a city street, posed an indecent question, and chased her briefly when she screamed and ran, but did not touch the victim, there was insufficient evidence of assault with intent to commit rape because there was no showing that the defendant intended to gratify his passions notwithstanding the resistance of the victim. *Id.* at 143, 29 S.E.2d at 459.

In contrast to *Gay*, the Supreme Court concluded in *State v. Bell*, 285 N.C. 746, 208 S.E.2d 506 (1974), that there was sufficient evidence of the defendant's intent to commit rape to support the defendant's conviction of first-degree burglary where the evidence tended to show that the defendant climbed into the victim's window, got into bed with her with his outside pants down and put his hand over her

mouth, threatened to cut her throat if she screamed, and ran away only when a third individual turned on the light in the room. *Id.* at 750, 208 S.E.2d at 508.

Defendant argues that the facts of the instant case are most analogous to the facts presented in *State v. Rushing*, 61 N.C. App. 62, 300 S.E.2d 445, *affirmed per curiam*, 308 N.C. 804, 303 S.E.2d 822 (1983), and *State v. Nicholson*, 99 N.C. App. 143, 392 S.E.2d 748 (1990). In *Rushing*, this Court vacated the defendant's conviction of attempted rape, concluding that there was insufficient evidence of the defendant's intent to rape the victim. The defendant in *Rushing* entered the victim's bedroom through a window, threatened to kill her if she screamed, and grabbed her arm. The defendant was wearing pants and gloves but no shirt at the time. When the victim's small child woke up and began screaming, the defendant abandoned his assault and jumped out of the window. The Court concluded that "a shirtless male's nocturnal entry into the bedroom of a sleeping woman" was insufficient to support an inference that the defendant intended to commit rape at the time he entered her room. *Rushing*, 61 N.C. App. at 66, 300 S.E.2d at 449.

The evidence in *State v. Nicholson* tended to show that, upon entering the residence of the victim, the defendant held a pistol to the victim's head and told her he was going to kill her. *See Nicholson*, 99 N.C. App. at 144, 392 S.E.2d at 750. He then forced the victim to walk to the living room of the residence, where she either fell or slid down onto the floor. The defendant picked the victim up and began carrying her towards the rear of the residence where the bedrooms and bathrooms were located. The victim screamed, fell or was dropped to the floor, and the defendant "slammed himself down on top of her." *Id.* at 145, 392 S.E.2d at 750. The defendant then began crying and allowed the victim to leave. He later apologized to her and gave her the pistol. The Court vacated the defendant's conviction of attempted rape, as there was no "evidence that would give rise to a reasonable inference that the attack on the victim was sexually motivated or that the defendant at any time had the intent to gratify his passion on the victim." *Id.* at 146, 392 S.E.2d at 750.

In the instant case, the evidence showed that defendant forced entry into the victim's residence at 4:00 a.m., pushed the resisting victim into her bedroom and "pinned her" onto the bed with his body, removed duct tape from his pocket and threatened to tape her mouth if she didn't "stop fussing" at him. The victim called to her sister, stating that defendant "was trying to rape her." During the struggle,

defendant "grabbed [the victim's] whole breast in [his] hand" and "grabbed her between her legs." Defendant did not end his assault on the victim until law enforcement arrived.

We conclude that there is sufficient evidence in the instant case, taken in the light most favorable to the State, from which a reasonable jury could find that defendant intended to gratify his passion on the victim, her resistance notwithstanding. Unlike the defendants in *Rushing* and *Nicholson*, defendant here committed overt acts manifesting an intent of forcible sexual gratification. Because there was sufficient evidence of defendant's intent to rape the victim, the trial court did not err in denying defendant's motion to dismiss the charge of attempted second-degree rape.

We moreover conclude that there was sufficient evidence from which a jury could find that defendant intended to rape the victim at the time he forced his way into the residence. The intent with which the accused broke and entered may be found by the jury from evidence as to what he did within the house. *See State v. Freeman,* 307 N.C. 445, 449, 298 S.E.2d 376, 379 (1983); *Bell,* 285 N.C. at 750, 208 S.E.2d at 508. Here, the evidence tended to show that defendant forced his way into the residence at four o'clock in the morning, when all of the residents of the home were asleep. When questioned, defendant lied to the victim, telling her that her mother had opened the door. Defendant then asked to use a telephone and the restroom. When the victim refused his request, defendant forced the victim into her bedroom, pushed her onto the bed, threw his body on top of hers and "pinned her down." Defendant then removed duct tape from his pocket, whereupon the victim renewed her efforts to escape and called for help. Defendant repeatedly touched the victim's breast and vagina and, despite her resistance, did not end the assault until law enforcement arrived. Although defendant asserts that he merely wished to use the telephone or the restroom when he entered the home, none of the acts he committed within the residence furthered these asserted goals. From the evidence presented, a reasonable jury could conclude that defendant broke into the residence with the specific intent to rape the victim. The trial court therefore did not err in denying defendant's motion to dismiss the charge of first-degree burglary.

[3] Defendant further argues that the trial court erred in denying his motion to dismiss the charge of second-degree kidnapping. Defendant contends that there was insufficient evidence that he restrained the victim for the purpose of facilitating a felony. Given

our conclusion that there was sufficient evidence from which the jury could find that defendant intended to rape the victim when he held her down on the bed, this argument is without merit.

Defendant further contends that the evidence of restraint forming the basis of the kidnapping charge was not independent of the restraint inherent in the attempted rape charge. Kidnapping, whether in the first or second degree, requires the unlawful restraint or confinement of a person for one of the purposes enumerated in the statute, which includes commission of a felony. *See* N.C. Gen. Stat. § 14-39(a) (2001). The unlawful restraint must be an act independent of the intended felony. *See State v. Mebane*, 106 N.C. App. 516, 532, 418 S.E.2d 245, 255, *disc. review denied*, 332 N.C. 670, 424 S.E.2d 414 (1992). Thus, the defendant's restraint of the victim must be independent of the alleged rape or attempted rape. The test of the independence of the act is "whether there was substantial evidence that the defendant[] restrained or confined the victim separate and apart from any restraint necessary to accomplish the act[] of [attempted] rape." *Id.* "Asportation of a rape victim is sufficient to support a charge of kidnapping if the defendant could have perpetrated the offense when he first threatened the victim, and instead, took the victim to a more secluded area to prevent others from witnessing or hindering the rape." *State v. Walker*, 84 N.C. App. 540, 543, 353 S.E.2d 245, 247 (1987). Where the asportation is separate and independent of the rape, it constitutes removal for the purpose of facilitating the felony of rape, and is therefore kidnapping under the statute. *See id.*

In the instant case, the evidence tended to show that defendant pushed the victim down the hallway of her residence, away from her sister's bedroom, into her bedroom and "pinned her" on her bed. We conclude that defendant's actions constitute evidence that he "took the victim to a more secluded area to prevent others from witnessing or hindering the rape." *Id.* The trial court therefore did not err in denying defendant's motion to dismiss the charge of second-degree kidnapping, and we overrule defendant's first assignment of error.

**[4]** By his second assignment of error, defendant contends that the trial court committed plain error by failing to instruct the jury on the lesser-included offense of non-felonious breaking and entering. "In order to prevail under a plain error analysis, defendant must establish. not only that the trial court committed error, but that 'absent the error, the jury probably would have reached a different result.' " *State*

*v. Sierra*, 335 N.C. 753, 761, 440 S.E.2d 791, 796 (1994) (quoting *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993)).

Misdemeanor breaking or entering is a lesser-included offense of first-degree burglary. *State v. Jones*, 264 N.C. 134, 136, 141 S.E.2d 27, 29 (1965); *State v. Patton*, 80 N.C. App. 302, 305, 341 S.E.2d 744, 746 (1986). "The distinction between the two offenses rests on whether the unlawful breaking or entering was done with the intent to commit the felony named in the indictment." *Patton*, 80 N.C. App. at 305, 341 S.E.2d at 746.

> "Where the only evidence of the defendant's intent to commit a felony in the building or dwelling was the fact that the defendant broke and entered a building or dwelling containing personal property, the appellate courts of this State have consistently and correctly held that the trial judge must submit the lesser included offense of misdemeanor breaking and entering to the jury as a possible verdict. . . . However, where there is some additional evidence of the defendant's intent to commit the felony named in the indictment in the building or dwelling, such as evidence that the felony was committed . . . or evidence that the felony was attempted, or . . . evidence that the felony was planned, and there is no evidence that the defendant broke and entered for some other reason, then the trial court does not err by failing to submit the lesser included offense of misdemeanor breaking and entering to the jury as a possible verdict."

*Id.* at 305-06, 341 S.E.2d at 746-47 (quoting *State v. Thomas and State v. Christmas and State v. King*, 52 N.C. App. 186, 196-97, 278 S.E.2d 535, 542-43 (1981)).

In the instant case, there was substantial evidence that defendant entered the residence in order to rape the victim. Once inside, defendant pushed the victim into her room and onto her bed, held her arms tightly behind her back, removed duct tape from his pocket, and repeatedly touched the victim's breast and vagina. Although defendant argues that there was evidence that he merely wanted to use the telephone and the restroom, none of the above-stated acts committed by defendant were in furtherance of defendant's stated intent to use the telephone or restroom. We conclude that the trial court committed no plain error in failing to instruct the jury on non-felonious breaking and entering, and we overrule this assignment of error.

[5] By his final assignment of error, defendant argues that the trial court plainly erred by failing to instruct the jury on the lesser-

included offense of false imprisonment in the second-degree kid-napping charge. The difference between kidnapping and the lesser-included offense of false imprisonment is the purpose of the confinement, restraint, or removal of another person. The offense is kidnapping if the reason for the restraint was to accomplish one of the purposes enumerated in the kidnapping statute. *See State v. Whitaker*, 316 N.C. 515, 520, 342 S.E.2d 514, 518 (1986). "The crux of [the] question [is] whether 'there was evidence from which the jury could have concluded that the defendant, although restraining, confining and removing the victim, did so for some purpose other than . . . to commit attempted second-degree rape.' " *Id.* at 520-21, 342 S.E.2d at 518 (quoting *State v. Lang*, 58 N.C. App. 117, 119, 293 S.E.2d 255, 257, *disc. reviews denied*, 306 N.C. 747, 295 S.E.2d 761 (1982)). Where the State presents evidence of every element of the offense, and there is no evidence to negate these elements other than the defendant's denial that he committed the offense, then no lesser-included offense need be submitted. *See State v. Williams*, 314 N.C. 337, 352-53, 333 S.E.2d 708, 719 (1985).

Defendant asserts that there was evidence from which the jury could find that defendant restrained the victim for purposes of using the telephone or restroom, or for purposes of "horseplay." We are unpersuaded. We fail to see how defendant's restraint of the victim and the repeated touching of the breast and vagina furthered his stated intent of using the telephone or restroom. Defendant's overtly sexual actions also belie his assertion that he was merely engaging in "horseplay" with the victim. We conclude that there was substantial evidence from which a jury could find that defendant restrained the victim for the purpose of raping her. We therefore find no plain error by the trial court in failing to instruct on the lesser-included offense of false imprisonment.

We hold that the trial court did not err in denying defendant's motion to dismiss the charges against him. We further hold that the trial court committed no plain error in failing to instruct the jury on the lesser-included offenses of misdemeanor breaking and enter-ing and false imprisonment. In the judgment of the trial court, we therefore find

No error.

Judges HUDSON and STEELMAN concur.