STATE OF NORTH CAROLINA v. MELVIN LEE BLIZZARD

No. COA04-312

(Filed 5 April 2005)

**1. Kidnapping— first-degree—motion to dismiss—sufficiency of evidence—rape**

The trial court did not err by denying defendant's motion to dismiss the first-degree kidnapping charge, because: (1) defendant's forcible movement of the victim from the front of her home to the bedroom was a sufficient asportation to support kidnapping in addition to rape; and (2) the trial court correctly arrested judgment of the first-degree kidnapping conviction after the jury's verdict and sentenced defendant in the presumptive range of second-degree kidnapping consistent with our Supreme Court's holding that a defendant may not be separately punished for the offenses of first-degree rape and first-degree kidnapping where the rape is the sexual assault used to elevate kidnapping to first-degree, although this holding does not affect the trial court's denial of defendant's motion to dismiss at the close of the State's evidence.

**2. Evidence— expert testimony—rape victim believable—not plain error**

Although a medical expert's testimony that the victim was "believable" in her allegation that defendant raped her was an impermissible comment on the credibility of the victim, the admission of this testimony was not plain error in light of the corroborative testimony and physical evidence offered by

the State because it did not have a probable impact on the jury's finding of guilt.

### 3. Evidence— poem—corroboration

The trial court did not abuse its discretion in a first-degree rape, first-degree burglary, and second-degree kidnapping case by admitting a poem written by the victim's boyfriend as a State's exhibit, because: (1) the State tendered the evidence to corroborate the victim's testimony that she did not consent to sexual intercourse with defendant due to her being in a relationship with another man and to corroborate witness testimony about the events that evening; and (2) defendant does not offer any authority to support his argument that the poem lacked any logical tendency to help prove the facts at issue or was unfairly prejudicial.

### 4. Rape— first-degree—instruction—serious personal injury

The trial court did not err by submitting a jury instruction on serious personal injury for the charge of first-degree rape, because: (1) the victim testified about mental or emotional harm from the attack that she still suffered at the time of trial, and a doctor testified to physical injuries she received in the attack; and (2) defendant received the opportunity to cross-examine the victim to attempt to create reasonable doubt in the jurors' minds regarding the issue.

### 5. Constitutional Law— effective assistance of counsel—dismissal of claim without prejudice

Although defendant contends he received ineffective assistance of counsel in a first-degree rape, first-degree burglary, and second-degree kidnapping case, this assignment of error is dismissed without prejudice for defendant to move for appropriate relief in the superior court and request a hearing to determine whether he received ineffective assistance of counsel, because: (1) the record is insufficient for the Court of Appeals to consider defendant's claim; and (2) defendant acknowledges in his brief that he is unable, on the present record, to litigate any of the claims for ineffective assistance.

Appeal by defendant from judgments entered 6 November 2003 by Judge Gregory A. Weeks in Brunswick County Superior Court. Heard in the Court of Appeals 16 February 2005.

## STATE v. BLIZZARD

[169 N.C. App. 285 (2005)]

*Attorney General Roy Cooper, by Assistant Attorney General Donald W. Laton, for the State.*

*Ligon and Hinton, by Lemuel W. Hinton, for defendant-appellant.*

TYSON, Judge.

Melvin Lee Blizzard ("defendant") appeals from judgments entered after a jury returned guilty verdicts of: (1) first-degree rape; (2) first-degree burglary; and (3) first-degree kidnapping. The trial court arrested judgment on the first-degree kidnapping conviction and sentenced defendant under second-degree kidnapping presumptive sentencing guidelines. We find no prejudicial error.

### I. Background

### A. State's Evidence

The State's evidence tended to show that on the evening of 19 December 2002, defendant and several other people gathered in Christine "Tina" Johnston's ("Johnston") home in Leland, North Carolina. The group of visitors and residents were acquainted with each other. They played cards, rolled dice, and consumed alcoholic beverages. The victim, Johnston's next door neighbor, arrived at Johnston's home between 9:00 and 9:30 p.m. She came over to check if her boyfriend had left a telephone message and to show Johnston a framed poem from him. Upon arrival, the victim was introduced to those present, including defendant. After about twenty minutes, the victim left and went home.

Later that night, the victim was sleeping on her couch when she heard a knock at her door. She opened the door slightly and recognized defendant standing outside. Defendant asked to come in and the victim said, "no." However, defendant was persistent and "just pushed his way in [to her home]." The two spoke briefly. Defendant brandished a knife. He told the victim to remove her clothing or he would cut them off. Defendant locked the door, grabbed the victim, and pushed her against the wall.

Defendant told her that he had been watching her at her house the week before. The victim tried to escape on several occasions, but defendant subdued her. He forced the victim to undress and demanded oral sex. He then forced her into her bedroom where he forced the victim into non-consensual sexual intercourse.

Ricky Blakely ("Blakely"), a next door neighbor, knocked loudly on the front door, interrupting defendant's attack. The victim screamed. Blakely burst through the front door and confronted defendant when he emerged from the bedroom. Defendant fled naked toward Johnston's home. The victim, also nude, ran out the back door of her home and hid behind Johnston's garbage can. Defendant and his mother, who was present at Johnston's house, gathered their belongings and left in separate vehicles.

After defendant left, the victim contacted law enforcement. Officer Keith Bowling of the Brunswick County Sheriff's Department responded to the call around 12:30 a.m. Officer Bowling found the victim in Johnston's bathroom crying and extremely upset. After Officer Bowling secured the scene, Johnston drove the victim to the New Hanover Regional Medical Center. The victim was examined by Dr. Kevin John Reese ("Dr. Reese"). Dr. Reese described the victim as "extremely upset" and "fearful." Dr. Reese diagnosed the victim as suffering from blunt trauma, swelling, and scrapes. According to Dr. Reese, the victim's injuries were consistent with someone who had been forcibly restrained.

Defendant was indicted for: (1) first-degree rape; (2) first-degree kidnapping; and (3) first-degree burglary. He pled not guilty to all charges and was tried by a jury on 4 November 2003.

## B.  Defendant's Evidence

Defendant testified that he had met the victim before the night of the alleged crimes. He stated that on 19 December 2002, the victim hugged him, stroked his hair, and made advances to him. He further testified that when he went to the victim's home later that night, the victim encouraged and consented to sexual intercourse with him. Defendant attempted to elicit on cross-examination that the victim's injuries were the result of "rough" consensual sex. He also testified that only after Blakely came to the door and discovered the two having consensual sex did the victim scream, "help, he raped me!" Defendant denied hitting or raping the victim.

The jury found defendant guilty of all charges. The trial court arrested the first-degree kidnapping conviction and sentenced defendant under second-degree kidnapping. Defendant was found to be a record level V offender and was sentenced in the presumptive ranges to: (1) a minimum of 433 months and maximum of 529

months for first-degree rape; (2) a minimum of 107 months and maximum of 138 months for first-degree burglary; and (3) a minimum of 42 months and maximum of 60 months for second-degree kidnapping. Defendant appeals.

## II.  Issues

Defendant argues: (1) the trial court erred in denying defendant's motion to dismiss the first-degree kidnapping charge; (2) the trial court committed plain error by admitting expert opinion testimony regarding the credibility of a prosecuting witness; (3) the trial court erred in admitting a poem as a State's exhibit; (4) the trial court improperly submitted a jury instruction on serious personal injury; and (5) that he received ineffective assistance of counsel.

## III.  Motion to Dismiss

### A.  Standard of Review

The standard of review for a motion to dismiss in a criminal trial is " '[u]pon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.' " *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993) (quoting *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980)).

> Evidence is substantial if it is relevant and adequate to convince a reasonable mind to accept a conclusion. If substantial evidence, whether direct, circumstantial, or both, supports a finding that the offense charged has been committed and that the defendant committed it, the motion to dismiss should be denied and the case goes to the jury. But, "if the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion should be allowed."
>
> In considering a motion to dismiss, the trial court must analyze the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference from the evidence. The trial court must also resolve any contradictions in the evidence in the State's favor. The trial court does not weigh the evidence, consider evidence unfavorable to the State, or deter-

mine any witnesses' credibility. It is concerned "only with the sufficiency of the evidence to carry the case to the jury." Ultimately, the court must decide whether a reasonable inference of defendant's guilt may be drawn from the circumstances.

*State v. Thaggard,* 168 N.C. App. 263, 281, 608 S.E.2d 774, 786 (2005) (internal citations and quotations omitted).

### B. First-Degree Kidnapping

**[1]** Our Supreme Court recently restated the definition of first-degree kidnapping in *State v. Bell,* 359 N.C. 1, 603 S.E.2d 93 (2004).

Kidnapping is the unlawful confinement, restraint, or removal of a person from one place to another for the purpose of: (1) holding that person for a ransom or as a hostage, (2) facilitating the commission of a felony or facilitating flight of any person following the commission of a felony, (3) doing serious bodily harm to or terrorizing the person, or (4) holding that person in involuntary servitude. N.C.G.S. § 14-39(a) (2003). Kidnapping is considered to be in the first-degree when the kidnapped person is not released in a safe place or is seriously injured or sexually assaulted during the commission of the kidnapping. N.C.G.S. § 14-39(b).

*Id.* at 25, 603 S.E.2d at 110 (citations omitted); N.C. Gen. Stat. § 14-39 (2003). The element of "confinement, restraint, or removal" requires "a removal separate and apart from that which is an inherent, inevitable part of the commission of another felony." *State v. Irwin,* 304 N.C. 93, 103, 282 S.E.2d 439, 446 (1981); *see also State v. Mebane,* 106 N.C. App. 516, 532, 418 S.E.2d 245, 255 ("restraint, confinement, and asportation of a rape victim may constitute kidnapping if it is a separate, complete act, independent of and apart from the rape"), *disc. rev. denied,* 332 N.C. 670, 424 S.E.2d 414 (1992). "Asportation of a rape victim is sufficient to support a charge of kidnapping if the defendant could have perpetrated the offense when he first threatened the victim, and instead, took the victim to a more secluded area *to prevent others from witnessing or hindering the rape." State v. Walker,* 84 N.C. App. 540, 543, 353 S.E.2d 245, 247 (1987). Evidence tending to show the rape victim was forced down a hallway from one room to another was a sufficient asportation separate and independent of the elements of rape to support a conviction for second-degree kidnapping. *State v. Mangum,* 158 N.C. App. 187, 195, 580 S.E.2d 750, 755, *cert. denied,* 357 N.C. 510, 588 S.E.2d 378 (2003) ("Kidnapping,

whether in the first or second degree, requires the unlawful restraint or confinement of a person . . . .").

The State presented evidence that defendant forced himself into the victim's home, locked the door behind him, held the victim at knife point, demanded she perform and received oral sex, forced her into a bedroom, and engaged in non-consensual sexual intercourse with her. Under the holding in *Mangum* and cases cited therein, defendant's forcible movement of the victim from the front of her home to the bedroom was a sufficient asportation to support kidnapping in addition to the rape. 158 N.C. App. at 195, 580 S.E.2d at 755-56. Defendant forced the victim to perform oral sex at knife point at the front of the house, indicating he could have continued the assault there. *Walker*, 84 N.C. App. at 543, 353 S.E.2d at 247. Instead, he moved her under knife point away from the front door to the bedroom to engage in non-consensual sexual intercourse.

Taken in the light most favorable to the State and providing the State the benefit of every reasonable inference from the evidence, substantial evidence exists to deny defendant's motion to dismiss the charge of first-degree kidnapping. Contradictions in the evidence are to be resolved in the State's favor. The trial court properly submitted the charge of first-degree kidnapping to the jury.

The trial court correctly arrested judgment of the first-degree kidnapping conviction *after* the jury's verdict and sentenced defendant in the presumptive range of second-degree kidnapping. The trial court's decision is consistent with our Supreme Court's holding that a "defendant may not be separately punished for the offenses of first degree rape and first degree kidnapping where the rape is the sexual assault used to elevate kidnapping to first degree." *State v. Mason*, 317 N.C. 283, 292, 345 S.E.2d 195, 200 (1986). However, the holding in *Mason* does not affect the trial court's denial of defendant's motion to dismiss at the close of the State's evidence. The trial did not err in denying defendant's motion to dismiss the charge of first-degree kidnapping for lack of sufficient evidence. This assignment of error is overruled.

## IV.  Medical Expert Opinion Testimony

[2] Defendant contends the trial court committed "plain error" in admitting a medical expert witness's opinion testimony that the victim was "believable" in her allegation that defendant raped her. We disagree.

### A.  Preservation of Potential Error for Appellate Review

Rule 10(b)(1) of the North Carolina Rules of Appellate Procedure requires:

> In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion.

N.C.R. App. P. 10(b)(1) (2004). Assignments of error are generally not considered on appellate review unless an appropriate and timely objection was entered and ruling obtained. *State v. Short*, 322 N.C. 783, 790, 370 S.E.2d 351, 355 (1988) (citing *State v. Reid*, 322 N.C. 309, 367 S.E.2d 672 (1988)); N.C. Gen. Stat. § 15A-1446(a) (2003).

Defendant acknowledges he failed to make a timely and specific objection when the State proffered Dr. Reese's opinion testimony into evidence. Under Rule 10(b)(1), defendant failed to preserve this assignment of error for review. Defendant urges us to consider his assignment of error under "plain error" review.

### B.  Plain Error Rule

Our Supreme Court adopted the plain error rule as an exception to Rule 10 in *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983) (applied to assignments of error regarding jury instructions). A defendant seeking plain error review must "specifically and succinctly" argue that any error committed by the trial court amounted to plain error. *State v. Nobles*, 350 N.C. 483, 514-15, 515 S.E.2d 885, 904 (1999), *vacated and remanded*, 357 N.C. 433, 584 S.E.2d 765 (2003). The proponent must show that:

> [A]fter reviewing the entire record, it can be said the claimed error is a *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has "resulted in a miscarriage of justice or in the denial to appellant of a fair trial" or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it

can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*Odom*, 307 N.C. at 660, 300 S.E.2d at 378 (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982) (footnotes omitted), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)). Our Supreme Court extended plain error review to issues concerning admissibility of evidence. *State v. Black*, 308 N.C. 736, 741, 303 S.E.2d 804, 807 (1983) ("we conclude, and so hold, that the 'plain error' rule as applied in *Odom* to Rule 10(b)(2) applies with equal force to Rule 10(b)(1)").

Defendant properly argued in his brief with citations to relevant authority that the admission of Dr. Reese's expert opinion testimony constitutes plain error, warranting this Court's review of an otherwise unpreserved assignment of error.

We examine the entire record to decide whether the error "had a probable impact on the jury's finding of guilt." *Odom*, 307 N.C. at 661, 300 S.E.2d at 379 (citation omitted). We determine whether, without this error, the jury would have "reach[ed] a different verdict." *State v. Riddle*, 316 N.C. 152, 161, 340 S.E.2d 75, 80 (1986).

### C. Medical Expert Opinion on Witness Credibility

This Court stated in *State v. Ewell*, 168 N.C. App. 98, 102, 606 S.E.2d 914, 918 (2005):

N.C. Gen. Stat. § 8C-1, Rule 702(a) (2003) provides, "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." However, an expert's opinion testimony may not be used to establish or bolster the credibility of a witness. *State v. Heath*, 316 N.C. 337, 342, 341 S.E.2d 565, 568 (1986).

The transcript shows that during the State's direct examination of Dr. Reese, he was asked:

State: Dr. Reese, did you provide medical treatment to . . . [the victim] on December 20th, early morning hours of last year?

Dr. Reese: Yes, I did.

State: And how did she present to you? What—what was her condition when you saw her?

Dr. Reese:	When I first saw her in the room, I saw a young female kind of huddled on the bed, crying, shaking, very emotionally upset, very, very extremely fearful of her life is what she stated "I'm scared of [sic] my life." *She truly was believable to me* as someone who was incredibly scared of something that had happened to her.

(Emphasis supplied). Dr. Reese's response was an impermissible comment by an expert medical witness on the credibility of the victim, the prosecuting witness. *State v. Stancil*, 355 N.C. 266, 266-67, 559 S.E.2d 788, 789 (2002); *State v. Couser*, 163 N.C. App. 727, 594 S.E.2d 420 (2004); *Ewell*, 168 N.C. App. at 105-06, 606 S.E.2d at 918. This testimony was admitted during the State's case-in-chief, prior to defendant "opening the door." *See State v. Baymon*, 336 N.C. 748, 752-53, 446 S.E.2d 1, 3 (1994) ("Opening the door" is the principle where one party introduces evidence of a particular fact and the opposing party may introduce evidence to explain or rebut it, even though the rebuttal evidence would be incompetent or irrelevant, if offered initially).

We hold the admission of Dr. Reese's expert opinion testimony bolstering the credibility of the victim, the State's chief prosecuting witness, was error.

### D. Plain Error

Having found the admission of Dr. Reese's expert opinion testimony "to establish or bolster the credibility" of the victim was error, we now consider whether this error constitutes plain error and prejudices defendant. *Heath*, 316 N.C. at 342, 341 S.E.2d at 568.

The State offered testimony from Blakely, Johnston, and Officer Bowling in addition to that of the victim and Dr. Reese. Blakely testified that after defendant left Johnston's house to go to the victim's home, he followed defendant thinking, "something was not right." Before he reached the victim's front door, he heard her screaming inside. When he finally kicked in the victim's door, defendant was nude and ran past him out the door, saying, "I didn't do anything wrong, I didn't do anything wrong." Blakely found the victim "scared and upset," and claiming that defendant "raped me."

Officer Bowling testified that upon arrival at Johnston's house, he found the victim in the bathroom and stated, "[s]he was crying and just very upset and very hysterical at the time." When Officer

Bowling asked the victim whether defendant had "made penetration," the victim responded, "[y]es he did." He described photographs of the victim's home, which included pictures of the victim's clothes strewn across the floor.

Johnston testified that she heard someone screaming after Blakely left to check on the victim. She described it as a "terrifying scream." When the victim finally entered Johnston's house after hiding behind the trash can, Johnston testified she was "hysterically crying, shaking," and told Johnston, "he raped me."

Defendant fails to argue and our complete review of the record and transcripts does not disclose that the error admitting Dr. Reese's comments on the victim's credibility was "something so basic, so prejudicial, so lacking in its elements that justice cannot have been done." *McCaskill*, 676 F.2d at 1002. In light of the corroborative testimony and physical evidence offered by the State, we hold the error did not have "a probable impact on the jury's finding of guilt," *Odom*, 307 N.C. at 661, 300 S.E.2d at 379, or absent the error, the jury would probably have returned a different verdict. *Riddle*, 316 N.C. at 161, 340 S.E.2d at 80. We hold the admission of Dr. Reese's expert opinion testimony that the victim was "believable" was not prejudicial to defendant to warrant a new trial. This assignment of error is overruled.

## V. State's Exhibit

[3] Defendant contends the trial court erred in admitting into evidence a poem written by the victim's boyfriend. We disagree.

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2003). Evidence is relevant if it has any logical tendency, however slight, to prove a fact at issue. *State v. Sloan*, 316 N.C. 714, 724, 343 S.E.2d 527, 533 (1986). Our Supreme Court has "interpreted Rule 401 broadly and [has] explained on a number of occasions that in a criminal case every circumstance calculated to throw any light upon the supposed crime is admissible and permissible." *State v. Collins*, 335 N.C. 729, 735, 440 S.E.2d 559, 562 (1994) (citations omitted).

Generally, all relevant evidence is admissible. N.C. Gen. Stat. § 8C-1, Rule 402 (2003). However, relevant "evidence may be excluded if its probative value is substantially outweighed by the dan-

ger of unfair prejudice, confusion of the issues, or misleading the jury, or by the considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2003). Exclusion or admission of evidence under Rule 403 rests within the sound discretion of the trial court. *State v. Mason*, 315 N.C. 724, 731, 340 S.E.2d 430, 435 (1986).

Here, the State tendered into evidence the poem the victim's boyfriend wrote and gave to her. The State argued two reasons for the poem's relevance and admission: (1) it corroborated the victim's testimony that she did not consent to sexual intercourse with defendant due to her being in a relationship with another man; and (2) it corroborated Johnston's and others' testimony about the events that evening. Defendant objected and asserts the poem was irrelevant or, if relevant, was misleading to the State's actual reason for admission.

Our review of the record and transcript fails to disclose that the trial court abused its discretion in admitting the poem into evidence. Defendant does not offer any authority to support his argument that the poem lacked any logical tendency to help prove the facts at issue or was unfairly prejudicial. This assignment of error is overruled.

## VI.  Jury Instructions

[4] Defendant contends the State's evidence did not support the trial court's instruction to the jury on "serious personal injury." We disagree.

## A.  Plain Error Review

Defendant acknowledges in his brief that he failed to object to this specific instruction during the charge conference or during the trial court's actual instruction to the jury. Under Rule 10(b)(1) of the North Carolina Rules of Appellate Procedure, this assignment of error was not preserved for appellate review. However, defendant "specifically and succinctly" asserted and requested that this Court consider this issue under plain error review. *Nobles*, 350 N.C. at 514-15, 515 S.E.2d at 904.

## B.  Standard of Review

This Court reviews jury instructions

contextually and in its entirety. The charge will be held to be sufficient if "it presents the law of the case in such manner as to

leave no reasonable cause to believe the jury was misled or misinformed . . . ." The party asserting error bears the burden of showing that the jury was misled or that the verdict was affected by [the] instruction. "Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury."

*Bass v. Johnson*, 149 N.C. App. 152, 160, 560 S.E.2d 841, 847 (2002) (internal citations and quotations omitted).

### C. Serious Personal Injury

Under N.C. Gen. Stat. § 14-27.2 (2003), "[a] person is guilty of rape in the first degree if the person engages in vaginal intercourse . . . with another person by force and against the will of the other person, and . . . [i]nflicts serious personal injury upon the victim or another person . . . ." Serious personal injury may be shown solely upon the existence of mental and emotional injury. *State v. Boone*, 307 N.C. 198, 205, 297 S.E.2d 585, 590 (1982), *overruled on other grounds*, *State v. Richmond*, 347 N.C. 412, 429-30, 495 S.E.2d 677, 686-87 (1998) ("Any language in . . . *Boone* suggesting that the serious personal injury element of first-degree rape or sexual offense cannot [include those injuries resulting in] death is therefore disavowed.").

[I]n order to prove a serious personal injury based on mental or emotional harm, the State must prove that the defendant caused the harm, that it extended for some appreciable period of time beyond the incidents surrounding the crime itself, and that the harm was more than the *"res gestae"* results present in every forcible rape. *Res gestae* results are those so closely connected to [an] occurrence or event in both time and substance as to be a part of the happening.

*State v. Baker*, 336 N.C. 58, 62-63, 441 S.E.2d 551, 553-54 (1994) (internal citations and quotations omitted).

### D. Analysis

The record and transcripts show sufficient evidence was tendered by the State to support a jury instruction on serious personal injury.

The victim testified about the impact of the attack on her emotionally: "I was living a healthy, regular like a normal 22 year old would, you know. I was fine. I wasn't scared all of the time. I didn't

have all of this anxiety. I could go places and do things by myself."
However, after 19 December 2002:

> I haven't been all right because I'm always scared—I'm always
> scared someone is watching me . . . . I don't go out by myself any-
> more . . . . I can't handle anyone coming up from behind me, say
> they're walking up behind me, it really—it does something to me.
> It's really traumatized me . . . . I thought it would get better . . . .
> I try to put it behind me but it's impossible. It's getting worse. I
> have nightmares, I have night sweats.

She further testified that she now varies her schedule to prevent
someone from predicting her activities, like defendant claimed he
had done. These effects from the attack continued to exist at trial,
eleven months after the assault.

Dr. Reese testified to the victim's physical injuries he observed
during his medical examination after the assault:

> she had soft tissue redness and swelling to the side of the face
> and her nose in the right eye area. The area had blunt trauma,
> swollen, and tender and red . . . . Blunt trauma, swelling to the
> right side of the mouth, lower lip . . . . She had soft tissue swelling
> to both sides of the neck underneath the chin, consistent with
> being held to the neck, squeezing, forceful, soft tissue, very ten-
> der underneath the neck . . . . [S]he had a large area about four to
> five inches, red, tender, swollen, acutely swollen area to the back
> of her back . . . . She had areas on both of her wrists . . . consist-
> ent with being held, scraped, someone holding her wrists . . . .
> [S]he had a couple of blood blisters on her fingertips.

Based on this evidence, the trial court gave the following jury
instruction concerning serious personal injury:

> Serious personal injury includes serious mental or emotional
> injury as well as bodily injury. In order for the State to meet its
> burden of proof as to serious personal injury because of injury to
> the mind or nervous system, the State must prove not only that
> such injury was caused by the defendant, but also that such men-
> tal injury extended for some appreciable period of time beyond
> the incidents surrounding the alleged crime itself. I further
> instruct you that such injury must be more than that normally
> experienced in every forcible rape. In other words, the mental or
> emotional injury must be more than that which is coincident with

every rape and which are the results that one could reasonably expect to be present during and immediately after any forcible rape has been committed.

N.C.P.I.—Crim. 207.10 (2003); *Boone*, 307 N.C. at 205, 297 S.E.2d at 590.

Defendant has not shown and we fail to see that the jury was "misled or misinformed" by the instruction. The trial court thoroughly examined the issue by considering applicable case law under *Boone* and hearing oral arguments by both parties. 307 N.C. at 205, 297 S.E.2d at 590. Defendant received the opportunity to cross-examine the victim to attempt to create reasonable doubt in the jurors' minds regarding the issue. The trial court did not err in charging the jury. Finding no error in the instruction, we do not consider defendant's assignment under plain error review. This assignment of error is overruled.

## VII.  Ineffective Assistance of Counsel

[5] Defendant asserts his counsel failed to provide meaningful assistance which prejudiced his defense.

The United States Supreme Court outlined a two-part test in *Strickland v. Washington* to determine if an ineffective assistance of counsel ("IEAC") claim has merit. 466 U.S. 668, 80 L. Ed. 2d 674, *reh'g denied*, 467 U.S. 1267, 82 L. Ed. 2d 864 (1984). Our Supreme Court adopted the test in *State v. Braswell*, 312 N.C. 553, 324 S.E.2d 241 (1985). First, the defendant must establish that his counsel's performance was deficient in that it fell below an "objective standard of reasonableness." *Id.* at 561-62, 324 S.E.2d at 248. Second, the defendant must show that a reasonable probability exists that but for the error, the result of defendant's trial would have been different. *Id.* at 563, 324 S.E.2d at 248.

We decline to reach defendant's IEAC assignment of error because it is not properly raised at this stage of review. A defendant's IEAC claim may be brought on direct review "when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." *State v. Fair*, 354 N.C. 131, 166, 557 S.E.2d 500, 524, *motion denied*, 354 N.C. 576, 558 S.E.2d 861 (2001), *cert. denied*, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002).

Here, the record is insufficient for this Court to consider defendant's claim. From our review of the transcripts and record, we cannot determine whether defense counsel's actions or inaction defendant cites to resulted from trial tactics, strategy, lack of preparation, or unfamiliarity with the legal issues. Further, defendant acknowledges in his brief that he "is unable, on the present record, to litigate any of those claims for [IEAC]."

Our dismissal of this assignment of error is without prejudice for defendant to move for appropriate relief and request a hearing to determine whether he received effective assistance of counsel. *See State v. Dockery*, 78 N.C. App. 190, 192, 336 S.E.2d 719, 721 (1985) ("The accepted practice is to raise claims of [IEAC] in post-conviction proceedings, rather than direct appeal."). This assignment of error is dismissed without prejudice for defendant to file a motion for appropriate relief in superior court.

## VIII.  Conclusion

The trial court properly denied defendant's motion to dismiss the charge of first-degree kidnapping. The admission of Dr. Reese's medical expert opinion testimony that the victim was "believable" was error, but not prejudicial to defendant. The trial court properly admitted the poem from the victim's boyfriend as relevant evidence to corroborate testimony given by other witnesses for the State. Sufficient evidence was proffered to warrant an instruction to the jury on the element of "serious personal injury" for the charge of first-degree rape. We decline to consider defendant's claim of IEAC and dismiss the assignment of error without prejudice for defendant to file a motion for appropriate relief. Defendant received a fair trial free from prejudicial error.

No prejudicial error.

Judges McGEE and GEER concur.